No. 15-5725 and
15-5999

United States Court of Appeals for
the Sixth Circuit

---

Lakendus Cole, et al;
Plaintiffs - Appellees

v.

City of Memphis, et al,
Defendants - Appellants

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis
Civil Case No. 2:13-cv-02117 (Honorable Jon P. McCalla)

---

APPELLANT'S PRINCIPAL BRIEF

---

J. Michael Fletcher
Attorney for City of Memphis
125 N. Main Street, Room 336
Memphis, TN 38103

Zayid A. Saleem,
Assistant City Attorney
125 N. Main Street, Room 336
Memphis, TN 38103

Barbaralette G. Davis
City Attorney's Office
125 N. Main Street, Ste. 336
Memphis, TN 38103

ORAL ARGUMENT REQUESTED

# CORPORATE DISCLOSURE

Pursuant to 6th Cir. R. 26.1, Appellee City of Memphis, makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

   No, except to the extent Appellee, City of Memphis, is a municipal corporation.

2. Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome? If Yes, list the identity of such corporation and the nature of the financial interest:

   No.


/s/ J. Michael Fletcher                     January 27, 2016
J. Michael Fletcher                          Date

# TABLE OF CONTENTS

CORPORATE DISCLOSURE ……………………………………………… i

TABLE OF CONTENTS ……………………………………………… ii

TABLE OF AUTHORTIES ……………………………………………... iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT ………………………… 1

STATEMENT OF JURISDICTION......................................................................1

STATEMENT OF ISSUES ………………………………………………… 5

STATEMENT OF THE CASE……………………………………………… 6

SUMMARY OF THE ARGUMENT…………………………………………… 13

ARGUMENT…………………………………………………………….. 15

    I.    THE DISTRICT COURT ERRED IN ITS DESCRIPTION AND APPLICATIO OF THE RIGHT TO INTRASTATE TRAVEL …………………………………….. 15

    II.    THE BEALE STREET SWEEP SHOULD BE ANALYZED UNDER RATIONAL BASIS AND SATISFIES THAT STANDARD ………………………………… 20

    III.    CLASS CERTIFICATION IS NOT APPROPRIATE BECAUSE IT DOES NOT SATISFY COMMONALITY ……………………………………….. 21

    IV.    THE BURDEN OF PROOF WAS IMPROPERLY SHIFTED TO THE CITY …… 25

    V.    THE CLEARING OF BEALE STREET WAS NOT THE MOVING FORCE BEHIND THE ARREST OF AND USE OF FORCE UPON COLE …………………… 28

CONCLUSION …………………………………………………………….. 30

CERTIFICATE OF COMPLIANCE ……………………………………….. 31

CERTIFICATE OF SERVICE …………………………………………… 31

DESIGNATION OF RECORD ……………………………………………… 32

# TABLE OF AUTHORITIES

**Cases**

Alexander v. Beale Street Blues Co., 108 F. Supp. 2d 934, 949 (W.D. Tenn. 1999)…………………………………………………………… 25

Attorney General of New York v. Sato-Lopez 476 U.S. 898, 903 (1986)………. 16

Baker v. McCollan, 443 U.S. 137, 145 (1979)…………………………………. 17

Berg v. County of Allegheny, 219 F. 3d 261, 276 (3d Cir. 2000)……………… 18

Board of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 407 (1997)……………………………………………………………………… 18, 28

City of Chicago v. Morales, ………………………………………………… ..16

E.E.O.C. v. New Breed Logististics, 783 F. 3d 1057, 1057, 1074 (6th Cir. 2015) ………………………………………………………………………… 27

E.E.O.C. at 1074 (quoting  Pivnick v. White, Getgey, & Meyer Co.,  LPA, 552 F. 3d 479, 488 (6th Cir. 2009)……………………………………… 28

Embry v. City of Cloverdale, Kentucky, 2004 WL 191613 (W.D. Ky)……… 19

Faralli v. Hair Today Gone Tomorrow, 2007 WL 120664 AT *6 (N.D. Ohio)…24

Florence v. Board of Chosen Freeholders of the County fo Burlington, 132 S. Ct. 1510,1518(2012)…………………………………………………… 18, 19

Johnson v. City of Cincinnati, 310 F. 3d 484 (6th Cir. 2002) 119 F. Supp. 2D 735, 744 (S.D. Ohio 2002) ……………………….. …………………..3, 13, 15, 16, 20

League of United Latin American Citizens v. Bredsen, 500 F.3d 523, 535 (6th Cir. 2007)………………………………………………… ……………….16, 17

Lutz v. City of York, Pennsylvania, 899 F. 2d 255 (3rd Cir. 1990)………. 19, 20

Planned Parenthood of Southeastern Pennsylvania, et al. v. Casey, Governor of Pennsylvania ……………………………………………………………. 17

Senter v. General Motors Corp., 532 F. 2d 511, 525, (6th Cir. 1976)………. 23

Town of Southold v. Town of East Hampton  477F. 3d 38, 54 (2d Cir. 2007)…………………………………………………….…………………… 16

Wardell v. Board of Education of the City of Cincinnati 529 F. 2d 625,628 (6th Cir. 1976) …………………………………………………………………… 13, 20

Young v. Nationwide Mut. Ins. Co., 639 F. 3d 532, 537-38 (6th Cir. 2012) … 24

Schilling v. Kenton Cnty., Ky., 2011 WL 293759 at *7 (E.D. Ky)………….. 24

Valezques v. HSBC Finance Corp. No/. 08-4592, 2009 WL 112919, at *4 (N.D. Cal.  Jan/ 16, 2009)…………………………………………………………. 24, 25

United States v. Ross, 502 F. 3d 521,527 (6th Cir. 2007)…………………..... 27

## Statutes

28 U.S.C. § 1331……………………………………………….. ………………. 2
28 U.S.C. § 1367………………………………………………………………. 2
28 U.S.C. § 1295………………………………………………………………. 5

## Other

Fed. R. Civ. P. 23 ...................................................................................................... 1
Fed R. Civ. P. 23(a)……………………………………………………………… 22
Fed. R. Civ. P. 23(b)(2)………………………………………………… 2, 22, 23
Fed R. App. P 32(a)(5) ……………………………………………………… 31
Fed R. App. P 32(a)(6) ……………………………………………………… 31
Fed R. App. P 32(a)(7) ……………………………………………………… 31

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Appellant requests oral argument.  Appellant submits multiple issues on appeal that are subject to *de novo* review and Appellant submits that it would benefit the panel to hear oral argument on the issues.

## STATEMENT OF JURISDICTION

Appellees, Lakendus Cole and Leon Edmond filed a Complaint in the United States District Court for the Western District of Tennessee asserting claims under the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as state law claims against the City of Memphis and individual officers.  *Complaint*, R 1, PageID 1-2.  Appellees Cole and Edmond sought class certification under Fed. R. Civ. P. 23.  Cole's core claim is that in the early morning hours of August 26, 2012, members of the Memphis Police force ordered all persons on a two block area of Beale Street to enter a night club or leave the sidewalks and street in the Beale Street Entertainment District.  Cole alleges that police arrested him on fabricated charges because of his failure to comply with the directive to leave the street, and that police used excessive force against him.  As to the class claim, Plaintiffs alleged that since at least 2007 thousands of other persons have been similarly treated upon the clearing of Beale Street in the early morning hours of some Saturdays and Sundays and certain scheduled entertainment events when there were no circumstances present which threaten the safety of the public or police officers.  *Complaint*, RE 1, PageID 2.

The Plaintiffs' theory of municipal liability rests on the following assertions. The named plaintiffs and members of the class were subjected to a deprivation of their rights under the Fourth and Fourteenth Amendments by the alleged actions of the officers in conducting a clearing of Beale Street pursuant to what Plaintiffs describe as the "Beale Street Sweep". *Complaint*, RE 1, PageID 2 Plaintiffs allege that the sweep was implemented despite there being "no circumstances present which threaten the safety of the public or MPD police officers." *Complaint*, RE 1, PageID 2 Plaintiffs assert that the policy or practice of which they complain violates the right of intrastate travel and results in police officers "assaulting, using excessive force, detaining, arresting and/or fabricating false [] criminal charges against persons who are engaged in lawful and constitutionally protected conduct." *Complaint*, RE 1, PageID 2 and 8. The District Court had jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1367.

The District Court granted Plaintiffs' motion to certify a class under Fed. R. Civ. P. 23(b)(2) described as "[a]ll persons who have been unlawfully removed from Beale Street and/or adjacent sidewalks by City of Memphis police officers pursuant to the custom, policy, and practice known as the Beale Street Sweep." *Order Granting In Part and Denying In Part Plaintiffs' Motion for Class Certification*, R.E. 88, PageID 780. The Beale Street Sweep has been defined as "the policy, procedure, custom, or practice by which police officers of the Memphis Police Department ("MPD") order all persons to immediately

leave the sidewalks and street on Beale Street when there are no circumstances present which threaten the safety of the public or MPD police officers ("Beale Street Sweep"). *Complaint,* RE 1, PageID 2; *Order Granting In Part and Denying In Part Plaintiffs' Motion for Class Certification,* R.E. 88, PageID 769.

The City filed a Motion for Summary Judgment on October 27, 2014. *Motion for Summary Judgment*, RE 92, PageID 815. Three days before trial, the District Court entered an Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment. *Order Denying Motion for Summary Judgment*, RE 121, PageID 1323-1359. The District court relied upon this Court's recognition of a fundamental right to intrastate travel which was in part the basis for striking down a drug exclusion zone ordinance. *Johnson v. City of Cincinnati*, 310 F. 3d 484 (6th Cir. 2002). *Order Denying Motion for Summary Judgment,* RE 121, PageID 1346-1348. The District Court also ruled that the Beale Street Sweep, *as alleged*, failed the strict scrutiny analysis. *Order Denying Motion for Summary Judgment,* RE 121, PageID 1352.

The case was tried before a jury. At the conclusion of the plaintiffs' proof and the trial, the City made an oral motion for judgment under FRCP 50(a). See: *Scheduling Order*, RE 147, PageID 1917-1918. The Court denied the Motion. The jury rendered a verdict in favor of Appellee Cole, but not Leon Edmond on January 26, 2015. *Jury Verdict*, RE 141, PageID 1899-1909. On June 3, 2015, the

Court entered an Order Granting Declaratory and Injunctive Relief. *Order Granting Declaratory and Injunctive Relief*, RE 161, PageID 2064-2107.

On February 13, 2015, the City filed a Motion to Decertify the Class in consideration of the jury verdict. *Motion to Decertify*, RE 148, PageID 1919-1920; *Memorandum In Support of Motion to Decertify*, RE 148-1, PageID 1921-1927. The District Court entered an order denying the motion to decertify**.** Rather than the policy or practice identified by the Plaintiffs pleadings and prior orders of the District Court, the court modified the definition of the class to that definition created by the District Court. *Order Denying Motion to Decertify*, RE 160, PageID 2061-2063.

City filed a Notice of Appeal on July 3, 2015. *Notice of Appeal*, RE 174, PageID 2218-2219. The appeal was docketed before this Court under number 15-5725.

On August 27, 2015, the District Court entered an Order Granting Monetary Damages, Prejudgment Interest, and Post-Judgment Interest which included an award of enhanced attorney's fees. *Order*, R.E. 188, PageID 2379-2402. On August 27, 2015, the District Court entered a Judgment and Equitable Relief based upon the Jury Verdict, Order Granting Declaratory and Injunctive Relief and Order Granting Monetary Damages, Prejudgment Interest, and Post-Judgment Interest. *Judgment and Equitable Relief*, RE 189, PageID 2403-2409.

City filed an Amended Notice of Appeal on September 11, 2015. *Amended Notice of Appeal*, RE 192, PageID 2472. This appeal was docketed before this Court under number 15-5999. The matters have been consolidated.

This Court has jurisdiction to review the District Court's ruling pursuant to *28 U.S.C § 1295*.

## STATEMENT OF ISSUES

1.     Whether the District Court erred in determining the scope of the right to intrastate travel.

2.     Whether the District Court erred in finding that directing of patrons within the Beale Street Entertainment District to enter a club or leave the district impermissibly burden the right to intrastate travel.

3.     Whether the District Court erred in applying strict scrutiny analysis to the clearing of Beale Street and, further, erred in finding that it did not satisfy strict scrutiny analysis.

4.     Whether the District Court erred in redefining the "Beale Street Sweep" in the Jury Instructions and Jury Verdict Form.

5.     Whether the District Court erred in shifting the burden of proof to the City requiring the City to prove that clearing of the street does NOT occur unless conditions throughout the two block Beale Street area pose an existing, imminent, or immediate threat to public safety.

6.     Whether the District Court erred in shifting the burden of proof to the City requiring the City to refute allegations of the Plaintiffs that "since at least 2007, thousands of people were cleared off" a two block area of Beale Street.

7.     Whether there was sufficient evidence to support the finding of the jury that the practice of clearing a two block area of Beale Street was the "moving force" behind the arrest of and unnecessary force used against Lakendus Cole by arresting officers.

8.     Whether the District Court erred in denying Appellant's Motion to Decertify the Class and redefining the Beale Street Sweep.

## STATEMENT OF THE CASE

This action arises out of a tactic occasionally employed by the Memphis Police Department within the two block section of Beale Street commonly known as the Beale Street Entertainment District.  When commanding officers on Beale Street determined the activities on the street or street crowding placed patrons, property or officers at risk, officers were sometimes instructed to take steps to temporarily close portions of the street to foot traffic.  *Transcript*, RE 198, PageID *Transcript,* RE 210, PageID 2863-2864. Officers would direct patrons to enter one of the night clubs on the street or leave the street.  Commanding officers would - when they determined public safety was secure - reopen the street. *Transcrip*t RE 198, PageID 2550; , *Transcript,* RE 202, PageID 2646

Beale Street is a public roadway unlike any other under the jurisdiction of the City of Memphis.  The City restricts access to Beale Street on a daily basis to both vehicle and foot traffic.  Barricades are placed on entrances of the street at the discretion of the manager of the street.  During hours chosen by the City (presently through the Downtown Memphis Commission), persons wishing to walk on the street and frequent the businesses thereon are subject to identification and weapons checks.  The City and State of Tennessee allow outside alcohol sales and open containers within the boundaries of the Beale Street Historic District(hereinafter "BSHD") exclusively.  Businesses are permitted to sell alcohol until 5:00 a.m.

On the evening of August 26, 2012 at approximately 3:56 a.m., Lakendus Cole, an off-duty Memphis Police Officer, was a patron of BSHD, specifically Club 152.  While standing on the sidewalk eating pizza after leaving the club, he was arrested by Memphis Police Officers for disorderly conduct, resisting a stop/arrest and vandalism related to a refusal to leave the street after an order to clear the street was given. *Complaint,* RE 1, PageID 9-10.   Both Officer Cole and his cousin, Darnell Tennial, testified that officers did not tell other people in line for pizza or on the street to leave.  *Transcript*, RE 211, PageID 2997; RE 217, PageID 3175.  The clearing was characterized as the "Beale Street Sweep".  The Beale Street Sweep, prior to the Jury Verdict Form, was alleged as:

> The policy, procedure, custom, or practice by which the police officers of the Memphis Police Department ("MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threatened the safety of the

public or MPD officers. ("Beale Street Sweep") *Complaint*, RE 1, Page ID 8; *Order Certifying Class*, RE 88, PageID 769: *Order on Motion for Summary Judgment*, RE 121, PageID 1352; *Pretrial Order*, *Plaintiffs' Contested Issues of Fact*, RE 133, PageID 1833.

The District Court—in its order denying the Motion of the City for Summary Judgment issued less than three days before trial--ruled that *as alleged* the Beale Street Sweep violated the fundamental constitutional right of persons in the Beale Street Historic District to intrastate travel exercised by walking and standing on the sidewalk and street. *Order on Motion for Summary Judgment*, R.E. 121, PageID 1339-1340. (emphasis in original). The District Court ruled that the "Beale Street Sweep as alleged was not narrowly tailored and fails strict scrutiny analysis." *Id* at PageID 1353.

The case was tried based upon the definition of Beale Street Sweep *as alleged* by the Plaintiffs. *Pretrial Order*, RE 133, PageID 1825, 1833. Testimony from Justin Hipner regarding sweeps which he observed between November, 2007 and December, 2011 describes the use of horses, officers walking shoulder to shoulder and segways. *Transcript*, R. 190, PageID 2419 and 2431-2432. Neither plaintiff—nor any other witness--described a "clearing" consistent with that described by Hipner on either May 5, 2012 and August 26, 2012.

Chief Arley Knight terminated the practice described by Mr. Hipner on June 14, 2012. *Transcript*, RE 210, PageID 2896. As testified to by Lt. Col. John Casad , the practice of activating blue lights and making announcements to enter a club or leave the entertainment district was utilized after other methods failed to

address threats to public safety on the street. *Transcript*, RE 198, PageID 2547-2548;

In other testimony, some officers speculated that the *authority* to clear the street was derived by ordinances, state open container statutes ,permits, or signs of unknown origin on buildings. *Transcript*, RE198, PageID; *Transcript,* RE 202, PageID 27 and 29;

Major James Howell, current commander of the Entertainment District Unit, testified that as of his assuming his position in April, 2013 he was not allowed to clear the street. *Transcript*, RE 219, PageID 3202.

As to the early morning of August 26, 2012, the officer in command in the Beale Street Historic District, Lt. Robert Skelton, testified as to violent events during the evening including ambulance calls, numerous fights, a patron thrown into a plate glass window. *Transcript*, RE 202, PageID 2647-2648. Those events and the concern of loss of control led Lt. Skelton to call for a clearing        Officer Mitchell Williams, called by the Plaintiffs, confirmed the events described by Skelton. *Transcript*, RE [1] Officer Williams also testified that at the time Lakendus Cole was arrested the clearing had been terminated. *Transcript*, RE 155, PageID 2002, 2008. Videos from the night depicts some of what Skelton and Williams describe – a person removed from the crowd on a gurney, several arrests and a large crowd in front of Club 152. *Trial Exhibit,* Videos 8, 10, & 11.     There also

---

[1] The complete transcript of Mitchell Jerome Williams was not available at the time of filing.  City will seek leave to supplement when it becomes available.

plainly appears to be a large crowd on the street before, during and after the arrest, rather than a street being cleared of patrons. *Trial Exhibit,* Videos 8, 9, 10, 11, & 12.

During the trial, the District Court engaged in discussions with counsel for the parties and prepared Jury Charges and a Jury Verdict Form. *Transcript*, RE 213, PageID 3032-3043    *Jury Verdict Form*, R.E. 129, pageID 1740-1750; *Jury Verdict Form*, RE 132, PageID 1811-1821. Counsel for the City objected to the Jury Verdict Form and submitted proposed modifications to the form. Those proposals were rejected. Post-trial the proposed modifications were filed by the City. *Proposed Jury Verdict Form*, RE 149-1, PageID 1930-1933.

In the Jury Verdict Form, the District Court redefined the Beale Street Sweep from that alleged by the Plaintiffs. As alleged by the Plaintiff and as recognized in the prior Orders of the District Court, the Beale Street Sweep was defined as *the policy, procedure, custom, or practice by which the police officers of the Memphis Police Department ("MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threatened the safety of the public or MPD officer.* The District Court revised the definition as one which *occurs without consideration to whether conditions throughout the Beale Street area pose an existing, imminent, or immediate threat to public safety. Jury Instructions*, RE 131, 1774-1775.

Based upon the Jury Verdict Form, the jury was to determine if the City rebutted three significant factual issues.

> 4. Defendant has the burden of proof by a preponderance of the evidence to show that the custom and/or well-established practice described in Questions 1 and 2 does <u>NOT</u> occur unless conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety. *Jury Verdict Form*, RE 141, PageID 1900, ques. 4.

> 5. Defendant has the burden of proof by a preponderance of the evidence to show that the custom and/or well-established practice described in Questions 1 and 2 did <u>NOT</u> result in thousands of persons being cleared off of Beale Street. *Jury Verdict Form*, RE 141, PageID 1901, ques. 5.

> 6. Defendant has the burden of proof by a preponderance of the evidence to show that the custom and/or well-established practice described in Questions 1 and 2 was <u>NOT</u> executed for the purpose of facilitating the end of a police work shift. *Jury Verdict Form*, RE 141, PageID 1901, ques. 6.

The jury found that the City failed to carry its burden of proof that the practice "does NOT occur unless conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety." *Jury Verdict*, RE 141, PageID 1900 . The jury also found that the City failed to carry its burden of proof that "at least since 2007, thousands of persons were NOT cleared off of Beale Street pursuant to the practice." *Jury Verdict*, RE 141, PageID 1901. The jury found that the City did carry its burden of proof that the practice "was NOT executed for the purpose of facilitating the end of a police work shift." *Jury Verdict*, RE 141, PageID 1901.

Based upon the answers to the Jury Verdict Form, the jury found that Mr. Cole was entitled to a judgment on his individual claim and was awarded a judgment of $35,000.00. *Jury Verdict*, RE 141, PageID 1905. The jury found that Mr. Edmond did not prove that his constitutional rights had been violated as he had alleged. *Jury Verdict*, RE 141, PageID 1909.

The City filed a Motion to Decertify the Class and Memorandum in support of the Motion. *Motion to Decertify*, RE 148 and 148-1. The motion reasserted the challenge to the order certifying the class on the issues of commonality and that the claims are not capable of being resolved by single proof, but rather require a merits-based adjudication to determine inclusion in the class. *Memorandum in Support of Motion to Decertify*, RE 148-1, PageID 1924-1925. The District Court denied the Motion to Decertify, but amended the class to be consistent with the Court's definition of Beale Street Sweep. *Order of Motion to Decertify*, RE 160, PageID 2050-2063.

After briefing and an evidentiary hearing on the issues of declaratory and injunctive relief, the District Court entered its Order on June 3, 2015. *Order on Declaratory and Injunctive Relief*, RE 161, PageID 2064-2107. In the District Court's Order enjoining the clearing, as defined by the Court, the Court declared that the "injunction does not prevent the MPD from . . . clearing Beale Street under appropriate circumstances where an imminent threat exists to public safety throughout the Beale Street area." *Order on Declaratory and Injunctive Relief*, RE

161, PageID 2092-2093. For guidance on the nature of the circumstances to which the District Court generally refers the Defendant to other case law. *Id.*

## SUMMARY OF THE ARGUMENT

The City challenges the finding of the District Court that there exists a fundamental constitutional right to intrastate travel protecting patrons of the Beale Street Entertainment District from the occasional and temporary closing of the street by Memphis police officers when commanding officers believe that public or officer safety is threatened. Implicitly in <u>Johnson</u>, not all state action would touch on or burden a fundamental right to intrastate travel. This Court recognized that in <u>Wardell v. Board of Education of the City of Cincinnati</u>, 529 F.2d 625,628 (6th Cir. 1976) a rational basis test may and did apply in a continuing residency requirement. This Court's ruling in <u>Johnson</u> was limited to right to travel locally through public spaces and roadways to carry out "daily life activities". <u>Johnson</u>, at 495 and 498.

The City respectfully maintains that even if clearing of the two block Beale Street Entertainment District substantially burdens the affected patrons' right to intrastate travel, the practice survives strict scrutiny. However, the City also argues that the clearing is unlike the severe restriction it imposed by the drug exclusion zones. It is a narrow and temporary place restriction which is appropriately analyzed under rational basis scrutiny utilized by this Court in <u>Wardell v. Board of</u>

Education of the City of Cincinnati, 529 F.2d 625 (6th Cir. 1976); See: Johnson v. City of Cincinnati, 310 F. 3d 484, 502, fn7 (6th Cir. 2002).

Further, the City argues that the District Court erred in creating a rebuttable presumption on critical issues presented to the jury as to the circumstance under which the police called for a clearing on August 24, 2012 and on other generally declared times since 2007. The District Court required the City to rebut allegations of the appellees set forth in their Complaint and in the Pre-trial Order rather than requiring that they carry their burden of proof.

As to the findings of the jury, the evidence as to Lakendus Cole does not support an essential finding that the Beale Street Sweep was the "moving force" behind the violation of his Fourth and Fourteenth Amendment rights. Officer Cole and his cousin Derrick Tenniel both believe they were targeted. Their testimony is that others were eating pizza and standing nearby, but were not arrested. While the clearing may have been an excuse for officers to act, it was not the moving force behind Cole's injuries.

The jury found that Appellee Cole was arrested and was the victim of excessive force because of the Beale Street Sweep. The jury found that Agent Edmond was not. Considering the fact intensive analysis that had to occur to determine that Cole was included in the class recognized by the District Court and to determine that Edmond was not, the City argues that the class should be decertified on the basis of lack of commonality.

The award of attorney's fees, in particular the enhancement of the fee, was excessive.

## ARGUMENT

## I. THE DISTRICT COURT ERRED IN ITS DESCRIPTION AND APPLICTION OF THE RIGHT TO INTRASTATE TRAVEL

This Court has recognized a fundamental right to intrastate travel in striking down an ordinance of the City of Cincinnati. In <u>Johnson v. City of Cincinnati</u>, 310 F.3d 484 (6th Cir. 2003), this Court defined that right as illegally restricting persons "right of function" to carry out "daily life activities." <u>Id.</u> at 498. This Court recognized that the criminal ordinance blocked "affected individual['s]" access to an entire metropolitan neighborhood of 10,000 people." <u>Johnson</u>, 310 F.3d at 503.

The District Court erred in finding that <u>Johnson</u> protects the right to intrastate travel as <u>per se</u> a fundamental right. This Court held that while "we do not foreclose the possibility of applying intermediate scrutiny to a less severe regulation of localized travel, the broad prohibition of the Ordinance requires that we apply strict scrutiny." *Johnson*, 310 F.3d at 502.

Unlike the ordinance which absolutely denied those charged with drug related offenses to enter and travel within the Over the Rhine neighborhood, the clearing of Beale Street took place occasionally and only when command officers charged with policing the two block entertainment district found that public or

officer safety was threatened.  Also, unlike the ordinance, the clearing was very limited in time.  The limited occasional burden upon the right to localized travel on Beale Street is far different from that in Johnson, or the residential requirement in Wardell.  See:  City of Chicago v. Morales, 119 S. Ct. 1849, 1857 (1999) n.19 (Court noted that it is incorrect to assume "that identification of an obvious liberty interest that is impacted by a statute is equivalent to finding a violation of substantive due process.")   While not diminishing the value to the City and patrons of frequenting the outside bars and enjoying music offered on Beale Street, police action to temporarily clear or close the two block entertainment district imposes is at worst an inconvenience.  In Johnson, the plaintiffs being banned from the neighborhood of 10,000 people were prevented from "caring for her grandchildren and walking them to school" and "seeking food, shelter, social services and meeting with his attorney." Id. at 503.

Since Johnson, this Court has ruled that even if a citizen's right to travel is constitutionally protected, a policy "implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right."  League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 535 (6th Cir.2007) (citing Attorney General of New York v. Sato-Lopez, 476 U.S. 898, 903 (1986)).  Mere inconvenience may be a burden on said right, but "the burden is incidental and

negligible, insufficient to implicate denial of the right to travel." Id. (citing Town of Southold v. Town of East Hampton, 477 F.3d 38, 54 (2d Cir.2007)).

"Not every law which makes a right more difficult to exercise is, *ipso facto*, an infringement of that right." Planned Parenthood of Southeastern Pennsylvania, et al. v. Casey, Governor of Pennsylvania, 505 U.S. 833, 873 (1992). The clearing of Beale Street, either as alleged by the Plaintiffs or as redefined by the District Court does not actually deter travel, nor is impeding travel its primary objective, nor does it use a classification that serves to penalize the exercise of the right. League of United Latin American Citizens, 500 F.3d 523, 535 (6th Cir.2007). Accepting that this Court has recognized a fundamental right to intrastate travel, the City submits that the challenged clearing places a burden that is incidental and negligible, and thus insufficient to implicate denial of the right to travel. Id. The City maintains that the clearing is a tactic utilized after the commanding officers on the scene make a prudent and reasonable decision based upon the circumstances as they perceive them. This good faith decision admittedly may be in error. The change turns a good faith error that incidentally causes a bystander to temporarily move from the location at which they prefer to stand into an infringement of his fundamental rights. Both prudence and jurisprudence demonstrate that a Plaintiff's innocence is largely irrelevant to a claim of deprivation of liberty without due process of law. "The Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant

acquitted—indeed, for every suspect released." Baker v. McCollan, 443 U.S. 137, 145 (1979) (citation omitted).

The District Court acknowledged that officers **may** clear Beale Street "under appropriate circumstances where imminent threat exists". *Order*, RE 161, PageID 2092-2093. Query: What if commanding officers on Beale Street determine that "appropriate circumstances" exist as they did on the night of August 26, 2012, but are later determined to be wrong as the jury determined in Appellee Cole's case? Rather than an intentional violation of the right to remain on the street, the City argues that the action is negligence. It is not the policy that burdens the right, it is the erroneous judgment of the command officers. "A showing of simple or even enhanced negligence" of the commanding officer in ordering an otherwise lawful clearing of the street does not give rise to liability. Board of County Com'rs of Bryan County, Okl. v Brown, 520 U.S. 397, 407 (1997); Berg v. County of Allegheny, 219 F.3d 261, 276 (3d Cir.2000).

The City submits that the occasional clearing of some law abiding persons who do not want to leave from Beale around 3:00 a.m. on Saturday and Sunday morning places a small burden of the right to intrastate travel recognized in Johnson. The U. S. Supreme Court in 2012 addressed a similar argument in Florence v. Board of Chosen Freeholders of the County of Burlington, 132 S. Ct. 1510 (2012). In Florence, the plaintiff commenced his action alleging that correctional personnel engaged in invasive body searches without reason to suspect

that he or similarly situated inmates were concealing weapons, drugs or other contraband. He alleged that the practice violated his Fourth and Fourteenth Amendment rights. Speaking for the Court, Justice Kennedy was not persuaded that correctional officials could only search those with indictable offenses or of whom they had reasonable suspicion. The Court found that undoubted security imperatives override the argument of the plaintiff, for himself and the class he represented, to be exempt from search procedures absent reasonable suspicion. The Court stated, "deference must be given to officials in charge of the jail unless there is 'substantial evidence' demonstrating their response to the situation is exaggerated." Florence v. Board of Chosen Freeholders of the County of Burlington, 132 S. Ct. 1510, 1518 (2012).

Unlike the drug exclusion zone criminal ordinance in Johnson, anti-cruising ordinance in Lutz v City of York, Pennsylvania, 899 F.2d 255 (3rd Cir. 1990) and city-wide curfew in Embry v. City of Cloverdale, Kentucky, 2004 WL 191613 (W.D. Ky.), the well-established practice found by the jury is an unwritten police tactic that has been utilized on Beale Street when commanding officers on the street held a good faith belief that it should be exercised. It is only applied to the entertainment district, not other parts of Beale Street or surrounding areas. It is limited in time to that necessary to eliminate the threat perceived by law enforcement. The legislatively created restrictions imposed in the above-cited cases were uniform and absolute.

## II. THE BEALE STREET SWEEP SHOULD BE ANALYZED UNDER RATIONAL BASIS AND STATISFIES THAT STANDARD

Something more than a negligible or minimal impact on the right to travel is required before strict scrutiny is applied.   League of United Latin American Citizens, 500 F.3d 523, 535(6th Cir. 2007).

However, the City argues that the clearing is unlike the severe restriction imposed by the drug exclusion zones.   It is a narrow and temporary place restriction which is appropriately analyzed under rational basis scrutiny utilized by this Court in Wardell v. Board of Education of the City of Cincinnati, 529 F.2d 625 (6th Cir. 1976); See: Johnson v. City of Cincinnati, 310 F. 3d 484, 502, fn7 (6th Cir. 2002)

If strict scrutiny is the proper measure, the City submits that clearing Beale Street under limited circumstances is the least restrictive means to protect public safety. Id.   The District Court suggested other means which would be less restrictive than temporary clearing of Beale Street Entertainment District – "authoriz[ing] more funds and more police officers to patrol neighborhoods [, and] . . . organiz[ing] neighborhood watches."   *Order Denying Motion for Summary Judgment*, RE 121, PageID 1351, citing Johnson v City of Cincinnati, 119 F. Supp. 2d 735, 744 (S.D. Ohio 2002).   Proof at trial was that the entertainment district has the highest concentration of police of any area in the City.   *Transcript,* RE 202, PageID 2643; *Transcript*, RE 210, PageID 2901-2902.   Officers are regularly

assigned to duty on Beale from other precincts. *Transcript*, RE 210, PageID 2901-2902. Officers commonly work overtime. Mr. Hipner testified that from November, 2007 to the end of December, 2011, City police officers would on occasion line up across Beale at Second Street and "sweep" the street. He has not witnessed this since 2011. *Transcript*, RE 190, PageID 2419, 2431-2432. The "sweep" as described by Hipner was not asserted by Cole or Edmond. Chief Arley Knight terminated that practice on June 14, 2012. As testified to by Lt. Col. John Casad and Dep. Chief Arley Knight, the practice of activating blue lights and making announcements was utilized after other methods failed to address conditions on the street. *Transcript*, RE 198, PageID 2547-2548. Major James Howell, current commander of the Entertainment District Unit, did testify that he will close the street to persons wanting to enter Beale Street. Actions to limit the public's unrestricted passage on the street is under certain circumstances, identified by the good faith professional judgment of commanding officers on the scene, the least restrictive means of addressing threats to public safety. If not, closing or limiting access to the street is problematic in itself.

### III. CLASS CERTIFICATION IS NOT APPROPRIATE BECAUSE IT DOES NOT SATISFY COMMONALITY

By its Order entered September 29, 2014, the Court certified a class at that time represented by Lakendus Cole and Leon Edmond, defined as follows:

> All persons who have been unlawfully removed from Beale Street and/or adjacent sidewalks by City of Memphis police officers pursuant to the

custom, policy and practice known as the Beale Street Sweep. *Order Certifying Class*, RE88, PageID 780.

The Beale Street Sweep was defined as:

> The policy, procedure, custom, or practice by which the police officers of the Memphis Police Department ("MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threatened the safety of the public or MPD officers. ("Beale Street Sweep") *Id.*, PageID 769.

The court found that the named Plaintiffs satisfied all requirements of Fed. R. Civ. P. 23(a) as class representatives to proceed to seek declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2). *Id.*, PageID 808. The Court found that "[a] single declaration that the Beale Street Sweep is unconstitutional and continues in practice today would provide a common answer to the claims of all class members." *Id.*, PageID 803.

As to the class representative Cole, the jury found that the practice prevented him from standing on Beale Street at 3:55 a.m., caused his unlawful arrest by police officers, and caused the officers to use unnecessary force in the arrest. *Jury Verdict,* RE 141, PageID 1902-1904. The jury found that Cole carried his burden of proof, that at the time of his arrest "conditions throughout Beale Street area did NOT pose an existing, imminent or immediate threat to public safety at the time the police officers initiated the custom and/or well-established practice . . ." *Jury Verdict*, RE 141, PageID 1902.

As to the prospective class representative Edmond, the jury found that he failed to carry his burden of proof that the "practice" "prevented Plaintiff Edmond from standing and/or walking on the sidewalk or street of Beale Street on May 5, 2012." *Jury Verdict*, RE 141, PageID 1906.  After finding that Edmond was not unlawfully arrested, the jury found that the practice was NOT the cause of Plaintiff's "unlawful arrest." *Jury Verdict*, RE 141, PageID 1907.

The application of an ordinance restricting access of a person charged with a crime to an entire neighborhood or permanent anti-cruising ordinance makes the class member readily identifiable.  This case involves actions ordered by Lieutenants and Majors on duty on Beale Street when they genuinely believed that closing the Beale Street Entertainment District was necessary to protect the public.

Both class representatives alleged that they were victims of the Beale Street Sweep, but only Cole was able to prove that the practice was the cause of his arrest and damages.

In its *Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification*, RE 88, the Court identified that a "class may be certified under 23(b)(2) where 'the common claim is susceptible to a single proof and subject to a single injunctive remedy.'"  *Order Certifying Class*, RE88, PageID 802; *Order Denying Motion to Decertify*, RE 160, PageID 2050-2061; citing <u>Senter v. General Motors Corp.</u>, 532 F. 2d 511, 525 (6th Cir. 1976).  Considering that of the two named plaintiffs only one was able to prove himself a member of the class,

Defendant submits that a "single declaration that the Beale Street Sweep is unconstitutional and continues in practice today" is not sufficient to answer a common question as to all class members.

Such a declaration does not assist in sufficiently defining the class such that it is "administratively feasible for the court to determine whether a particular person is a member of the class". See: <u>Young v. Nationwide Mut. Ins. Co.</u>, 693 F. 3d 532, 537-38 (6th Cir 2012); <u>Faralli v. Hair Today Gone Tomorrow</u>, 2007 WL 120664 at *6 (N.D. Ohio). The class is defined as "all persons unlawfully removed", not as in the case of the named Plaintiffs and those who testified or were discussed at trial, all of whom were arrested. The City submits that it is not administratively feasible for the court to determine whether a particular person is a member of the class. Therefore, the City submits that the class as defined is overly broad in that the common claim is not susceptible of being resolved by single proof and subject to injunctive remedy. The class "must not require a merits based adjudication to determine inclusion". <u>Schilling v Kenton Cnty., Ky.</u>, 2011 WL 293759 at *7 (E.D. Ky). It took two years of litigation and a five-day trial to determine that Leon Edmond was not a member of the class.

Specifically pertaining to §1983 cases, a class definition is too general where it requires the Court to determine whether an individual's constitutional rights have been violated in order to ascertain membership in the class itself. <u>Id.</u>, at *5. As previously stated, Plaintiff Leon Edmond was found not to be a member of the

class only at the conclusion of the trial.  The class here is defined by the merits of the plaintiffs' legal claims, and is therefore unascertainable prior to a finding of liability in the plaintiffs' favor.  Id., quoting Velazquez v. HSBC Finance Corp., No. 08-4592, 2009 WL 112919, at *4 (N.D.Cal. Jan. 16, 2009).  Such a class is palpably unfair to the defendant, as well as unmanageable.  Id.

## IV.    THE BURDEN OF PROOF WAS IMPROPERLY SHIFTED TO THE CITY

To establish municipal liability under § 1983, a Plaintiff must show that (1) there was a deprivation of a right secured by the Constitution and (2) an affirmative city policy or a policy of inaction was the moving force behind the violation. Alexander v. Beale Street Blues Co., 108 F. Supp. 2d 934, 949 (W.D. Tenn. 1999).

The District Court found that if "as alleged" a custom and/or well-established practice "by which police officers of the Memphis Police Department (hereinafter referred to as the "MPD") order all persons to immediately leave the sidewalks and street on Beale Street when there are no circumstances present which threaten the safety of the public or MPD police officers", the policy violated the right to intrastate travel.  Order Denying Motion for Summary Judgment, RE 121, PageID 1352.  Appellant submits that it remained for the Appellees to carry their burden of proof as to the custom and/or policy as alleged.

Until the jury charges and jury verdict form were formulated, the allegation of the Appellees was consistent as set forth above.

In its jury charges and jury verdict form, Appellees burden of proof was reduced to prove that "the City of Memphis, through its police officers, carried out a custom and/or well-established practice mainly on weekends at or about 3:00a.m. of preventing persons from standing and/or walking on the sidewalk of Beale Street. *Jury Verdict*, RE 141, PageID 1899.

The burden of proving that the clearing "does NOT occur unless conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety" was placed with the City. *Jury Verdict*, RE 141, PageID 1900.

According to the jury charges and jury verdict form the City was to refute two other allegations of the Appellee – that "since at least 2007 thousands of persons were cleared off Beale and that the policy was executed for the purpose of facilitating end of a police work shift.

The City objected to the Jury Verdict Form and tendered a proposed form which was rejected, in particular as to questions 1, 2, 5, 6, 8, 16 and 29, by the District Court. *Proposed Jury Verdict Form,* RE 149-1, PageID 1930-1933; *Transcript,* RE 213, PageID 3057, 3059, 3066, 3068, 3071, 3074, 3078 and 3084.

The jury in this cause found that police officers "carried out a custom and/or well-established practice mainly on weekends at or about 3:00 a.m. of preventing persons from standing and/or walking on the sidewalk or street of Beale Street", both before, on, and after June 14, 2012. *Jury Verdict*, RE 141, PageID 1899-1900. Further, and as is relevant to class relief, the jury found that the City failed

to carry its burden of proof that the practice "does NOT occur unless conditions throughout the Beale Street area pose an existing, imminent or immediate threat to public safety." *Id.*, PageID 1900.

This shifting of the burden of proof to the City lacks logical consistency. Jury Verdict question no. 4 asked whether the custom or policy occurs *without consideration* to whether an existing, imminent or immediate threat to public safety exists; while the instructions regarding the burden of proof requires the City to prove that the custom or policy was never actually occurred absent actual conditions exist which pose an existing, imminent, or immediate threat to public safety. Neither statement implies or negates the other. It is perfectly possible to clear the street in anticipation of an imminent threat that does not come to fruition or exist.

The jury also found that the City failed to carry its burden of proof that "at least since 2007, thousands of persons were NOT cleared off of Beale Street pursuant to the practice." *Id.*, PageID 1901. The jury found that the City did carry its burden of proof that the practice "was NOT executed for the purpose of facilitating the end of a police work shift." *Id.*, PageID 1901.

The Sixth Circuit "reviews a district court's jury instructions for an abuse of discretion." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074 (6th Cir. 2015) (citing *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007)). A trial court "does not abuse its discretion unless the jury charge fails accurately to reflect the

law." *United States v. Ross*, 502 F.3d 521, 527 (6th Cir. 2007). "The court assesses 'whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion.'" *E.E.O.C.* at 1074 (quoting *Pivnick v. White, Getgey, & Meyer Co., LPA*, 552 F.3d 479, 488 (6th Cir. 2009)). "A judgment may be reversed based upon an improper jury instruction only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Ross* at 527.

The City submits that the Jury Charges and Jury Verdict form are fatally deficient for the reasons set forth above.

## V.     THE CLEARING OF BEALE STREET WAS NOT THE MOVING FORCE BEHIND THE ARREST OF AND USE OF FORCE UPON COLE

For a plaintiff to establish liability of a municipality for a violation of substantive due process, the plaintiff must "demonstrate that, through its *deliberate* conduct (policy or practice), the municipality was the "moving force" behind the injury alleged".  [language inserted] <u>Board of County Com'rs of Bryan County, Okl. V. Brown</u>, 397, 404 (1997).  It is settled law that the conclusion that the action taken or directed by the municipality or its authorized decision maker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains. <u>Id. at 405.</u>

Appellant argues that plaintiff must prove by a preponderance of the evidence that the actions of the officers were taken or directed by the practice of

clearing Beale Street, and thus the proximate cause of the violation of Lakendus Cole's Fourth and Fourteenth Amendment rights.

The jury found that the policy or practice of the City "caused' the arrest of Lakendus Cole. *Jury Verdict*, RE 141, PageID 1902. The jury found that at the policy or practice "caused" the use of excessive force on Lakendus Cole. *Jury Verdict*, RE 141, PageID 1904.

Appellant submits that the testimony of Lakendus Cole and Darnell Tennial—who were arrested in the same incident—starkly conflict with the jury findings. Darnell Tennial testified that there were no blue lights flashing, that forty to fifty civilians were standing on the street as he and Cole were. *Transcript*, RE 217, PageID 3174-3175. Mr. Tennial did not see any other person removed from the street and it seemed to him that he and Lakendus Cole were targeted. *Transcript*, RE 217, PageID 3175. Similarly, Lakendus Cole viewed Video Exhibit 8 and testified that between five and twelve other people were in line for pizza. *Transcript*, RE 211, PageID 2988. Mr. Cole also testified that officers only told he and his cousin to leave. *Transcript,* RE 211, PageID 2997.

Officer Mitchell Williams testified that at the time Lakendus Cole was arrested the clearing had ended. *Transcript*, RE 155, PageID 2002-2004. After officers had been advised that the clearing had ended at possibly 2:50 a.m., he was moved to Second and Beale were he observed the arrest of Lakendus Cole. *Transcript*, RE 155, PageID 2002.

The standard that must be met is that the unconstitutional policy was the "moving force" which resulted in the arrest and use of excessive force in violation of the Fourth Amendment rights of the plaintiff. The City submits that the evidence of those affected and Officer Williams do not support the jury finding of causation.

## CONCLUSION

In view of the foregoing and the record, the Defendant-Appellant submits that the District Courts Order and the jury's verdict should be reversed.

Respectfully Submitted,

**BRUCE MCMULLEN**
**CHIEF LEGAL OFFICER/CITY ATTORNEY**

BY:   /s/ J. Michael Fletcher
        J. Michael Fletcher, Esq., BPR# 06954
        125 N. Main Street, Room 336
        Memphis, TN 38103
        Phone: (901) 636-6614
        Fax:  (901) 636-6524

        *Attorney for City of Memphis*

BY:   /s/ Zayid A. Saleem
        Zayid A. Saleem, Esq., BPR# 026571
        Assistant City Attorney
        125 N. Main Street, Rm 336
        Memphis, TN 38103
        Phone: (901) 636-6614
        Fax: (901) 636-6524

        *Attorney for City of Memphis*

BY: /s/ Barbaralette G. Davis
Barbaralette G. Davis, Esq. BPR# 11500
Senior Assistant City Attorney
125 N. Main Street, Rm 336
Memphis, TN 38103
Phone: (901) 636-6614
Fax: (901) 636-6524

*Attorney for City of Memphis*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because, the brief contains 7,308 words. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because, this brief has been prepared in a proportionally spaced typeface using Word 2013 in 14 point Times New Roman.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the forgoing document was filed electronically with the court on this 27th day of January, 2015. Service will be made by operation of that system upon the following:

s/ J. Michael Fletcher
J. Michael Fletcher

# DESIGNATION OF THE RECORD

- Affidavit R.E 90-1, Page ID # 1262 ¶ 13
- Affidavit, R.E. 97-1, Page ID #1544
- Appeal, R.E. 128, Page ID #1970-1971
- Appeal, R.E. 146, Page ID # 2159-2160
- Appeal, R.E.125, Page ID # 1932-1933
- Attachment, R.E. 85 through 85-18; Page ID# 975-1174
- Attachment, R.E. 85-2, Page ID #1005 see DR 118
- Attachment, R.E. 85-2, Page ID# 1002-1003
- Attachment, R.E. 97-2, 97-3, 97-4 and 97-5
- Attachment, R.E. 97-4, Page ID # 1580-1596
- Complaint, R.E. 1, Page ID# 2
- Complaint, R.E. 1, Page ID# 9-10
- Complaint, R.E., Page ID# 11
- Depositions, 83-3, 83-5, 83-7, 83-8, 83-10 and 83-11
- Depositions, R.E. 83-4 through 83-8 and 83-11
- Exhibits, R.E 83-3, 83-5, 83-7, 83-8, 83-10, 83-11
- Memorandum R.E. 83-2, Page ID # 572 ¶ 76 and 573 ¶ 78
- Memorandum R.E. 83-2, Page ID # 572-573, ¶s 76 and 78
- Memorandum R.E. 88, Page ID# 1193, fn. 1
- Memorandum, R.E. 83-2, Page ID # 566, ¶ 11 and Page ID #567 ¶ 17 and 18
- Memorandum, R.E. 83-2, Page ID # 566, ¶ 11 and Page ID #567. ¶s 17 and 18
- Memorandum, R.E. 83-2, Page ID # 567, ¶ 20
- Memorandum, R.E. 83-2, Page ID # 567-568, ¶s 19-36
- Memorandum, R.E. 83-2, Page ID # 570 and 572, ¶s 50-51 and 74
- Memorandum, R.E. 83-2, Page ID # 572, ¶ 75
- Memorandum, R.E. 83-2, Page ID #570, ¶ 50-51; 572 ¶ 74
- Memorandum, R.E. 83-2, Page ID# 564
- Memorandum, R.E. 83-2, Page ID# 564, ¶ 1)
- Memorandum, R.E. 83-2, Page ID# 565, ¶ 8
- Memorandum, R.E. 83-2, Page ID# 565, ¶2)
- Memorandum, R.E. 83-2, Page ID# 565, ¶5)
- Memorandum, R.E. 83-2, Page ID# 565, ¶6)
- Memorandum, R.E. 83-2, Page ID# 565, ¶s 6 and 8)

- Memorandum, R.E. 83-2, Page ID# 566, ¶ 10
- Memorandum, R.E. 83-2, Page ID# 566, ¶ 10
- Memorandum, R.E. 83-3, 83-5, 83-7, 83-8, 83-10 and 83-11, Page ID# 574-603, 674-700, 729-745, 746-773 and 794-821
- Memorandum, R.E. 84-1, Page ID # 909-910
- Memorandum, R.E. 88, Page ID #1205
- Memorandum, R.E. 88, Page ID# 1143
- Memorandum, R.E. 88, Page ID# 1192
- Memorandum, R.E. 88, Page ID# 1192, 1208-1211
- Memorandum, R.E. 88, Page ID# 1193
- Memorandum, R.E. 88, Page ID# 1193, fn. 1
- Memorandum, R.E. 88, Page ID# 1205 and 1212-1213
- Memorandum, R.E. 88, Page ID#1261-1262
- Memorandum, R.E. 88-1, Page ID# 1219 ¶ 19
- Memorandum, R.E. 89, Page ID# 1229
- Memorandum, R.E. 89, Page ID# 1229 fn 19
- Memorandum, R.E. 89, Page ID# 1229, fn. 19
- Memorandum, R.E. 93, Page ID# 11507-11508
- Memorandum, R.E., 83-4, 83-5, 83-6, 83-7, 83-8 and 83-11, Page ID# 604-746 and 805-821
- Motion for Summary Judgment, R.E. 571-572, ¶ 57 and 67-68
- Motion for Summary Judgment, R.E. 83, 84, Page ID #531-533, 899-900
- Motion for Summary Judgment, R.E. 83-2, Page ID# 566 ¶ 10
- Notice, R.E. 90-1, Page ID# 1260-1262
- Order, R.E. 114, Page ID # 1770-1787
- Order, R.E. 114, Page ID # 1782
- Order, R.E. 114, Page ID # 1785
- Order, R.E. 114, Page ID # 1785
- Order, R.E. 114, Page ID # 1785
- Order, R.E. 114, Page ID # 1786
- Order, R.E. 114, Page ID# 1771
- Order, R.E. 114, Page ID# 1785
- Order, R.E. 114, Page ID# 1786
- Order, R.E. 114, Page ID# 1786
- Order, R.E. 114, Page ID# 1786
- Order, R.E. 114, Page ID# 1786
- Reply to Response, R.E. 97-1, Page ID# 1546

- Reply to Response, R.E. 97-1, Page ID# 1547
- Reply to Response, R.E. 97-1, Page ID# 1547
- Reply to Response, R.E. 97-1, Page ID# 1550
- Reply to Response, R.E. 97-1, Page ID#1547
- Reply to Response, R.E. 97-2, Page ID# 1554-1577
- Reply to Response, R.E. 97-3, Page ID# 1577
- Reply to Response, R.E. 97-4, Page ID# 1593
- Reply, R.E. 91-1, Page ID#1539 and 1547
- Response, R.E. 88, Page ID# 1193
- Response, R.E. 89, Page ID# 1229, fn. 19
- Response, R.E. 92, Page ID #1481
- Response, R.E. 97, Page ID# 1542
- Response, R.E. 97-1 through 97-5, Page ID# 1544-1601
- Response, R.E. 97-1 through 97-5, Page ID# 1544-1601
- Statement of Undisputed Facts, R.E. 85, Page ID # 976-981, ¶s 3-37
- Statement of Undisputed Facts, R.E. 85, Page ID # 984-985, ¶s 54-55
- Statement of Undisputed Facts, R.E. 85, Page ID # 985-986, ¶s 58-61